Ms. SARAH A. BUCKLEY, Va. Bar No. 87350
Mr. GUS MAXWELL, Ca. Bar No. 326800
Ms. AMANDA V. LINEBERRY, Va. Bar No. 94862
sarah.buckley@usdoj.gov
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-7554

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CLIMATE PROTECTION AND RESTORATION INITIATIVE, *et al*., | Case No. 6:22-cv-1772-MK |
| Plaintiffs, | DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER VENUE |
| v. | Pursuant to Fed. R. Civ. P. 12(b)(1), (3), and (6) |
| MICHAEL REGAN, Administrator of the Environmental Protection Agency, *et al*., | |
| Defendants. | Request for Oral Argument |

**DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER VENUE
AND MEMORANDUM IN SUPPORT**

## MOTION

Defendants, Michael Regan, Administrator of the U.S. Environmental Protection Agency ("EPA") and EPA (together, "EPA"), hereby move to dismiss Plaintiffs' Complaint or, in the alternative, transfer venue to the U.S. District Court for the District of Columbia. This motion is supported by the following memorandum. In compliance with Local Rule 7-1(a), the parties conferred by telephone in a good-faith effort to address each issue raised in this motion and have been unable to do so.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iv

Introduction.......................................................................................................... 1

Background ........................................................................................................... 3

   I.   Statutory Background .................................................................................. 3

   II.  Factual Background .................................................................................... 4

Standard of Review............................................................................................... 6

Argument ............................................................................................................. 8

   I.   Plaintiffs Lack Article III Standing ............................................................. 8

      A.  The Complaint does not allege injury-in-fact to Plaintiffs other than Viviani. ............ 8

           1.   The Complaint does not allege any concrete injury to Birks, Heede, Van Susteren, or Climate Science, Awareness and Solutions.................................. 9

           2.   The Complaint does not allege cognizable injury to Hansen. ......................... 9

           3.   The Complaint does not allege injury-in-fact to CPRI, the sole venue-anchoring party. ...................................................................................... 10

               a.   The Complaint does not allege direct injury to CPRI. ............................. 11

               b.   The Complaint does not establish that CPRI can assert associational standing............................................................................... 13

      B.  Plaintiffs have not adequately alleged any harm causally connected to EPA denying their Petition, or redressable by a favorable decision. ................................ 16

   II.  If Not Dismissed on Standing Grounds, the Case Should Be Dismissed or Transferred for Lack of Venue........................................................................... 21

   III. Plaintiffs Have Failed to State a Claim........................................................ 22

      A.  Plaintiffs failed to adequately identify the chemical substances or mixtures at issue in their Petition. .................................................................................. 23

      B.  Plaintiffs' Petition failed to request a "rule" as required under TSCA...................... 26

           1.   TSCA requires citizens to petition for "a rule," but Plaintiffs expressly disclaim that they have done so. ......................................................... 27

           2.   An "unreasonable risk" determination is not "a rule.".................................. 29

           3.   Requiring Plaintiffs to petition for "a rule" is a critical gatekeeping requirement, protecting EPA's administrative capacity. ............................... 32

      C.  EPA cannot regulate legacy greenhouse gas disposal under TSCA. ....................... 35

Conclusion ......................................................................................................... 36

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright,*
  468 U.S. 737 (1984) .................................................................................. 16

*Am. Fed'n of Gov't Emps. Loc. 1 v. Stone,*
  502 F.3d 1027 (9th Cir. 2007) .................................................................. 11

*Am. Legal Found. v. F.C.C.,*
  808 F.2d 84 (D.C. Cir. 1987) .................................................................... 15

*Animal Legal Def. Fund v. U.S. Dep't of Agric.,*
  632 F. App'x 905 (9th Cir. 2015) ............................................................. 12

*Arpaio v. Obama,*
  797 F.3d 11 (D.C. Cir. 2015) ...................................................................... 8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................... 7, 8

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................. 7, 17

*Blunt v. Lower Merion Sch. Dist.,*
  767 F.3d 247 (3d Cir. 2014) ...................................................................... 12

*Buckwalter v. Nev. Bd. of Med. Exam'rs,*
  678 F.3d 737 (9th Cir. 2012) ...................................................................... 7

*Ctr. for Biological Diversity v. Jackson,*
  815 F. Supp. 2d 85 (D.D.C. 2011) ............................................................ 34

*Ctr. for Law & Educ. v. U.S. Dep't of Educ.,*
  315 F. Supp. 2d 15 (D.D.C. 2004) ............................................................ 12

*Citizens Against Ruining The Env't v. EPA,*
  535 F.3d 670 (7th Cir. 2008) ...................................................................... 33

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
  657 F.3d 936 (9th Cir. 2011) ...................................................................... 12

*Defs. of Wildlife v. Perciasepe,*
  714 F.3d 1317 (D.C. Cir. 2013) ................................................................ 18

*Ecological Rts. Found. v. Pac. Lumber Co.*,
    230 F.3d 1141 (9th Cir. 2000) ........................................................ 17

*Env't Def. Fund v. Reilly*,
    909 F.2d 1497 (D.C. Cir. 1990) ................................................... 3, 33

*Fair Hous. Council v. Roommate.com LLC*,
    666 F.3d 1216 (9th Cir. 2012) ........................................................ 11

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .......................................................................... 8

*Fund for Animals, Inc. v. Lujan*,
    962 F.2d 1391 (9th Cir. 1992) ........................................................ 10

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ........................................................................ 11

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ............................................................. 13, 14, 15

*Immigrant Assistance Project of the L.A. Cnty. Fed'n of Lab. v. INS*,
    306 F.3d 842 (9th Cir. 2002) .......................................................... 21

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) .......................................................... 22

*Juliana v. United States*,
    947 F.3d 1159 (9th Cir. 2020) ........................................ 10, 19, 20, 21

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) .......................................................... 7

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ........................................................................ 10

*La Asociacion de Trabajadores de Lake Forest v. Lake Forest*,
    624 F.3d 1083 (9th Cir. 2010) ................................................... 12, 13

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ..................................................... 6, 7, 8, 10, 16, 19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) .......................................................... 7

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ............................................................... 7

*Meister v. City of Hawthorne*,
  No. CV-14-1096-MWF, 2014 WL 12596426 (C.D. Cal. July 28, 2014)................................ 15

*Mendia v. Garcia*,
  768 F.3d 1009 (9th Cir. 2014) ............................................................... 16

*MGIC Idem. Corp v. Weisman*,
  803 F.2d 500 (9th Cir. 1986) ............................................................... 14

*Nat'l Audubon Soc'y, Inc. v. Davis*,
  307 F.3d 835 (9th Cir. 2002) ............................................................... 16

*Or. Advoc. Ctr. v. Mink*,
  322 F.3d 1101 (9th Cir. 2003) ............................................................... 15

*Piedmont Label Co. v. Sun Garden Packing Co.*,
  598 F.2d 491 (9th Cir. 1979) ............................................................... 7

*Pritikin v. Dep't of Energy*,
  254 F.3d 791 (9th Cir. 2001) ............................................................... 20

*Ry. Lab. Execs.' Ass'n v. I.C.C.*,
  958 F.2d 252 (9th Cir. 1991) ............................................................... 21

*Safer Chems., Healthy Fams. v. EPA*,
  943 F.3d 397 (9th Cir. 2019) ............................................................... 23, 35

*Sierra Club v. Morton*,
  405 U.S. 727 (1972).......................................................................... 11

*Simon v. E. Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976)............................................................................ 11

*Smith v. Pac. Props. & Dev. Corp.*,
  358 F.3d 1097 (9th Cir. 2004) ............................................................... 11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)...................................................................... 9, 17, 20

*State of Louisiana v. Biden*,
  No. 22-30087, 2023 WL 2780821 (5th Cir. Apr. 5, 2023).................................... 18

DEFENDANTS' MOTION TO DISMISS
OR TO TRANSFER VENUE                                                              vi

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ........................................................................... 9, 10

*Trumpeter Swan Soc'y v. E.P.A.*,
    774 F.3d 1037 (D.C. Cir. 2014) ............................................................. 28

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ................................................................................ 15

*Walker v. City of Lakewood*,
    272 F.3d 1114 (9th Cir. 2001) ............................................................... 11

*Warth v. Seldin*,
    422 U.S. 490 (1975) .................................................................................. 7

*Wash. Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013) ........................................... 16, 17, 18, 21

**Statutes**

15 U.S.C. § 2601 ............................................................................... 3, 34

15 U.S.C. § 2602 ....................................................... 3, 24, 28, 27, 35

15 U.S.C. §§ 2603-07 ............................................................................ 3

15 U.S.C. § 2605 ....................................... 1, 3, 24, 25, 27, 30, 31 32

15 U.S.C. § 2618(a)(1)(A) .................................................................. 22

15 U.S.C. § 2620 .......................................................................... *passim*

15 U.S.C. § 2625 ..................................................... 2, 3, 6, 24, 26

28 U.S.C. § 1391(a) ............................................................................... 4

28 U.S.C. § 1391(e) ......................................................................... 21, 22

28 U.S.C. § 1404(a) ............................................................................. 21

28 U.S.C. § 1406(a) ......................................................................... 21, 22

28 U.S.C. § 2201(a) ............................................................................. 10

42 U.S.C. § 7675 ................................................................................................................ 33

**State Statutes**

Or. Rev. Stat. Ann. § 65.001(30) ...................................................................................... 14

Or. Rev. Stat. Ann. § 65.144 ............................................................................................. 14

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................................................... 6

Fed. R. Civ. P. 12(b)(3) .................................................................................................. 7, 21

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 7

**Federal Registers**

82 Fed. Reg. 33,726 (July 20, 2017) ................................................................................ 35

87 Fed. Reg. 57,665 (Sept. 21, 2022) ..................................... 4, 5, 6, 24, 25, 26, 29, 31, 33, 35

**Legislative Materials**

S. Rep. No. 94-698 (1976) ................................................................................................ 20

## INTRODUCTION

Plaintiffs seek judicial review of EPA's denial of a citizen petition submitted under the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2620, which permits "[a]ny person" to petition EPA "to initiate a proceeding for the issuance . . . of a rule" under, as relevant here, 15 U.S.C. § 2605. Section 2605 authorizes EPA to regulate chemical substances or mixtures by applying certain listed requirements. *See id*. § 2605(a). If EPA denies a citizen petition, "the petitioner may commence a civil action in a district court of the United States to compel [EPA] to initiate a rulemaking proceeding as requested in the petition." *Id*. § 2620(b)(4)(A).

Plaintiffs' Petition broadly sought "a determination by [EPA] that the continuing manufacture, processing, distribution, use and disposal" of "greenhouse gas (GHG) emissions, fossil fuels, and fossil fuel emissions" presents "an unreasonable risk of injury to health and the environment." Compl. Ex. 1 (Petition) at 3 (cleaned up). Plaintiffs did not request any particular rule or requirement, besides asserting that an unreasonable risk determination would "authorize and compel" EPA to take some undefined action, and noting that, whatever TSCA action EPA chose to undertake, it should "at minimum" "phase out" the "production and importation and, as warranted, [the] processing, distribution, use or atmospheric disposal" of greenhouse gases, fossil fuels, and fossil fuel emissions, and "remove and securely sequester" excess greenhouse gases already in the atmosphere. *Id*. at 3, 7–8.

The reach of Plaintiffs' Petition is both sweeping and indeterminate, and, consequently, fatally flawed. It fails TSCA's requirements to articulate both the chemical substances or mixtures to be addressed and the rule petitioners claim to be necessary—requirements all the more necessary given that Congress has mandated an aggressive schedule for EPA to evaluate

and regulate *other* chemical substances. EPA appropriately denied the Petition, and the Court should dismiss Plaintiffs' Complaint for failure to state a claim, if it reaches the merits.

The Court should, however, dismiss this case on threshold grounds. Plaintiffs lack Article III standing. The Complaint does not allege concrete injury to most Plaintiffs. And Plaintiffs have not plausibly alleged that EPA's action—denying a petition that did not request any particular rule—is causally contributing to any injuries they do allege.

At minimum, Plaintiff Climate Protection and Restoration Initiative ("CPRI") lacks standing because it has not alleged direct organizational injury fairly traceable to EPA's denial. Nor is CPRI a membership organization capable of asserting the members' interests. Because CPRI, the sole venue-anchoring party, lacks standing, this suit should be dismissed or transferred—to the U.S. District Court for the District of Columbia—if the Court does not dismiss the remaining Plaintiffs on standing grounds.

Finally, if the Court decides not to dismiss on jurisdictional grounds and concludes that venue is proper, the Complaint should be dismissed for failure to state a claim. A citizen petition under TSCA must "set forth the facts which it is claimed establish that it is necessary to issue . . . a rule under" Section 2605. 15 U.S.C. § 2620(b)(1). By failing to identify definitively which chemical substances and mixtures—or a defined category thereof, *see id.* § 2625(c)(2)—are the Petition's subject, or to identify "a rule" that Plaintiffs could demonstrate is "necessary" for EPA to issue, Plaintiffs did not meet that threshold burden. Moreover, insofar as Plaintiffs seek regulation of greenhouse gases already in the atmosphere, that "legacy disposal" is beyond TSCA's reach. The Court should dismiss the Complaint.

## BACKGROUND

### I.    Statutory Background

Congress enacted the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.*, to inventory, assess, and manage the risks to human health and the environment associated with toxic chemical substances. *See generally* 15 U.S.C. § 2601(b); *see also Env't Def. Fund v. Reilly*, 909 F.2d 1497, 1498 (D.C. Cir. 1990) (explaining TSCA's enactment "launched a comprehensive program to anticipate and forestall injury to health and the environment from activities involving toxic chemical substances" (cleaned up)).

Specifically, TSCA authorizes EPA to mandate reporting, record-keeping, testing requirements, and restrictions related to "chemical substances" and "mixtures," both being defined terms. *See* 15 U.S.C. §§ 2603–07. In general, a "chemical substance" is "any organic or inorganic substance of a particular molecular identity[.]" 15 U.S.C. § 2602(2)(A). A "mixture" is "any combination of two or more chemical substances if the combination does not occur in nature and is not, in whole or in part, the result of a chemical reaction[.]" 15 U.S.C. § 2602(10). EPA has discretion to act "with respect to a category of chemical substances or mixtures," but only if certain requirements are met. *Id.* § 2625(c)(1).

This case focuses on TSCA's risk evaluation and risk management provision, *id.* § 2605, and its citizen petition provision, *id.* § 2620. TSCA, at 15 U.S.C. § 2620, allows any person to petition EPA to initiate a proceeding for, as relevant here, the "issuance . . . of a rule" under Section 2605. *Id.* § 2620(a). The statute provides that "[s]uch petition" must "set forth the facts" establishing that it is "necessary" to issue such a rule. *Id.* § 2620(b)(1). EPA must either grant or deny the petition within 90 days. *Id.* § 2620(b)(3). If EPA grants the petition, EPA must "promptly commence an appropriate proceeding in accordance with" Section 2605. *Id.* If EPA

denies the petition, EPA must publish its reasons in the Federal Register. *Id.* A petitioner may

seek judicial review in federal district court if EPA denies a petition. *Id.* § 2620(b)(4)(A). Venue

over such suits is prescribed by the general venue statute. *See* 28 U.S.C. § 1391(a).

In an action that properly challenges EPA's denial of a petition for the issuance of a

Section 2605(a) rule, the petitioner is "provided an opportunity to have such petition considered

by the court in a de novo proceeding." 15 U.S.C. § 2620(b)(4)(B). If the petitioner demonstrates

"by a preponderance of the evidence" that "the chemical substance or mixture to be subject to [a

Section 2605] rule . . . presents an unreasonable risk of injury to health or the environment . . .

under the conditions of use," then "the court shall order [EPA] to initiate the action requested by

the petitioner." *Id.* § 2620(b)(4)(B), (b)(4)(B)(ii).

## II.    Factual Background

On June 16, 2022, EPA received Plaintiffs' Section 2620 petition. *See* Compl. Ex. 2

(Petition Denial) at 1, *available at* 87 Fed. Reg. 57,665 (Sept. 21, 2022). The Petition requested

that EPA "determin[e]" that "the continuing manufacture, processing, distribution, use and

disposal" of "greenhouse gas (GHG) emissions, fossil fuels, and fossil fuel emissions" presents

"an unreasonable risk of injury to health and the environment." Compl. Ex. 1 at 3. Elsewhere, the

Petition stated that the greenhouse gases "at issue in this Petition include" carbon dioxide,

methane, nitrous oxide, and halocarbons "from all sources," *id.* at 7 n.7, in addition to "emissions

associated with the manufacture, processing, distribution, use and disposal of fossil fuels,"

including greenhouse gases and "other pollutants released or emitted during those activities,

including particulate matter and sulfur and nitrogen dioxides," *id.* at 7 n.8. The Petition did not

assert that this broad, ambiguous, and open-ended set of substances and mixtures constitutes a

"category" of substances potentially regulable under TSCA, but simply denoted them the "subject chemical substances and mixtures." *Id.* at 3.

The Petition invoked Section 2620 "to petition the Administrator for a rulemaking under TSCA [Section 2605]," Compl. Ex. 1 at 21, but expressly disclaimed that it was asking EPA to issue any particular rule addressed to any specific condition(s) of use of the "subject chemical substances and mixtures." Instead, the Petition explicitly requested only an unreasonable risk determination. *See id.* at 3, 7 (seeking "determination" that the chemical substances and mixtures "present[] an unreasonable risk of injury to health and the environment"); *id.* at 15 ("[T]he instant Petition seeks only EPA's unreasonable risk determination."). It indicated an unreasonable risk determination would *ultimately* require EPA to (1) phase out the manufacture (including import) and, "as warranted," the processing, distribution in commerce, use, or disposal of these "subject chemical substances and mixtures," and (2) remove and sequester such "subject chemical substances and mixtures" from the environment or, alternatively, establish a pay-in fund for their removal. *See id.* at 7–8, 30.

EPA timely denied the Petition on September 14, 2022, and published its reasons for denial in the Federal Register on September 21, 2022. *See* 87 Fed. Reg. 57,665. EPA first explained that Section 2620 authorizes only petitions seeking to initiate a proceeding to issue, amend, or repeal a rule or order. *Id.* at 57,667. In other words, citizens "may not petition under TSCA section [2620] for a stand-alone risk determination" separate and apart from a request for a specific rulemaking under TSCA Section 2605(a). *Id*. Citizens also cannot petition for a risk evaluation under TSCA Section 2605(b). *Id.*

EPA also concluded that the Petition did not set forth facts sufficient to show a Section 2605(a) rule was necessary. EPA explained that, to enable EPA to conclude within the statutory

90-day review period that a requested rulemaking is necessary, "the petition would need to be sufficiently clear and robust." 87 Fed. Reg. at 57,668. Plaintiffs' Petition, however, was "insufficiently specific" to meet Plaintiffs' burden to "establish[] that it is necessary to issue a rule under TSCA section [2605](a)." *Id.*

EPA explained that, especially "[i]n light of the sprawling nature of the climate problem and its solutions, and the number of federal government activities already ongoing to address the problem," *id.* at 57,669, the Petition did not meet that burden. First, it did not sufficiently identify which chemical substances and mixtures from which sources and activities that the petitioners contended must be subject to TSCA regulation. EPA also explained that, to the extent the petitioners implicitly sought regulation of the chemical substances and mixtures it did identify as a "category" under 15 U.S.C. § 2625(c), the Petition did not sufficiently define the category or provide a basis for categorization. Second, EPA explained that the petitioners failed to adequately identify what TSCA rule they were requesting, particularly given the breadth of the Petition. Accordingly, EPA concluded that the petitioners failed to demonstrate that TSCA regulation is "necessary" under these unique circumstances.

Plaintiffs—the two nonprofit organizations and five individuals that submitted the Petition—filed their Complaint on November 12, 2022. *See* ECF No. 1.

## STANDARD OF REVIEW

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court must determine whether the Complaint sets forth allegations sufficient to establish jurisdiction over the claims for relief. To invoke federal jurisdiction, Plaintiffs must establish they meet the "irreducible constitutional minimum" of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Each element of standing "must be supported . . . with the manner and degree of

evidence required at the successive stages of the litigation." *Id.* at 561. For a motion to dismiss

for lack of standing, the Court "must accept as true all material allegations of the complaint and

must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490,

501 (1975). The "lack of *Article III* standing requires dismissal for lack of subject matter

jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

Plaintiffs also bear the burden of showing that venue is proper in this forum. *Piedmont*

*Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). Failure to do so

subjects the Complaint to dismissal under Rule 12(b)(3) or transfer to an appropriate venue.

Beyond these threshold requirements, the Court must also dismiss a complaint that fails

to state a claim upon which relief can be granted. In considering a Rule 12(b)(6) motion, the

Court must accept Plaintiffs' material factual allegations as true and view them in the light most

favorable to the claimant. *See Buckwalter v. Nev. Bd. of Med. Exam'rs*, 678 F.3d 737, 739 (9th

Cir. 2012). However, the Court need not accept as true any legal conclusion set forth in a

pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may also consider documents

relied upon in the Complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

To survive a Rule 12(b)(6) motion, a complaint must set forth facts supporting a

plausible, not merely possible, claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). While a complaint attacked under Rule 12(b)(6) "does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Id.* (cleaned up). The Court "need not accept as true conclusory allegations that are

contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine*

*Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## ARGUMENT

### I.    Plaintiffs Lack Article III Standing.

To establish standing at the pleading stage, the Complaint must clearly allege facts that plausibly support the three elements of standing: (1) injury, (2) causation, and (3) redressability. *Lujan*, 504 U.S. at 560–61. While well-pleaded factual allegations are accepted as true and all reasonable inferences are drawn in Plaintiffs' favor, "[t]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Thus, to establish standing, Plaintiffs must allege sufficient facts to demonstrate (1) they have "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) their injury is "fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61). Plaintiffs have failed to do so.

#### A.  The Complaint does not allege injury-in-fact to Plaintiffs other than Viviani.

For all but one Plaintiff, the Complaint does not allege facts that could establish injury-in-fact sufficient to confer standing. Those Plaintiffs should be dismissed from this litigation for

that reason alone. As discussed in Part I.B, the remaining Plaintiff (Dr. Donn J. Viviani) lacks standing for other reasons.

### 1.    The Complaint does not allege any concrete injury to Birks, Heede, Van Susteren, or Climate Science, Awareness and Solutions.

Plaintiffs have not alleged any facts establishing that Plaintiffs Dr. John Birks, Richard Heede, Dr. Lise Van Susteren, or Climate Science, Awareness and Solutions have suffered any injury. *See* Compl. ¶¶ 26, 27, 28. Although Plaintiffs allege that these plaintiffs were "among the group that submitted the underlying Petition to EPA," *id.*, a "bare procedural violation, divorced from any concrete harm," is not sufficient to satisfy Article III's injury-in-fact requirement. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Absent any "concrete interest that is affected by the deprivation," *id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)), those plaintiffs lack standing.

### 2.    The Complaint does not allege cognizable injury to Hansen.

The Complaint also fails to allege that Plaintiff Dr. James E. Hansen is threatened by an actual or imminent *future* injury that would provide standing for the injunctive relief sought here. *See Summers*, 555 U.S. at 493 (explaining that a plaintiff "bears the burden of showing that he has standing for each type of relief sought"). To obtain injunctive relief, Plaintiffs must demonstrate that they are "under threat of suffering 'injury in fact' that is concrete and particularized; [and] the threat must be actual and imminent, not conjectural or hypothetical," among other things. *Id.* Here, although the Complaint alleges that Dr. Hansen suffered climate-

change-related damages to his family's property in 2012, Compl. ¶ 25, it does not allege that Dr.

Hansen is individually or particularly threatened with any future harm.

The allegations regarding Dr. Hansen do not, therefore, meet the standard articulated in

*Summers*. And, because this Court lacks jurisdiction to award Dr. Hansen injunctive relief, there

is no "actual controversy within its jurisdiction," 28 U.S.C. § 2201(a), that would make Dr.

Hansen eligible for declaratory relief. The Complaint does not request any other relief that could

confer standing on Dr. Hansen.

The allegation that Dr. Hansen has a long-term concern about the "impact of climate

change on the future of young people," including "his own grandchildren" and other unnamed

"young people near and dear to Dr. Hansen," Compl. ¶ 24, is also inadequate to demonstrate

injury-in-fact. First, there is no allegation of any relationship between Dr. Hansen and specific

third parties that could give Dr. Hansen standing to represent their interests in litigation. *See*

*Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004). Second, while Defendants do not doubt the

sincerity of Dr. Hansen's fears about climate change, the Complaint does not allege anything

"beyond a generalized concern"—shared by many—which does not constitute Article III injury.

*Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1396 (9th Cir. 1992). Although climate change

can inflict individual, particularized harm, *see Juliana v. United States*, 947 F.3d 1159, 1168 (9th

Cir. 2020), Plaintiffs must show a personal threat of immediate and concrete injuries. *Lujan*, 504

U.S. at 560. The Complaint does not do so for Dr. Hansen.

### 3. The Complaint does not allege injury-in-fact to CPRI, the sole venue-anchoring party.

The Complaint's allegations do not satisfy the legal standards for establishing that CPRI

has standing due to injury either to itself or to any members.

### a. The Complaint does not allege direct injury to CPRI.

In the Ninth Circuit, an organization can establish an injury-in-fact if it demonstrates: (1) its claim arises out of an event causing the frustration of its organizational mission; and (2) it has diverted its resources to combat the wrongdoing in question. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). CPRI has shown neither.

Plaintiffs' generic allegation that EPA's Petition denial "directly undermines [CPRI's] goals and mission" to "restore and protect a viable climate system," Compl. ¶ 9, does not meet the standard for organizational injury. To establish frustration of mission, CPRI must allege more than a setback to its "abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also Sierra Club v. Morton*, 405 U.S. 727, 739 (1972). CPRI's interest in halting climate change, "no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization adversely affected or aggrieved." *Id.* at 739 (internal quotation marks omitted); *see also Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 39–40 (1976) (a plaintiff's "abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III").

Rather, demonstrating frustration-of-mission sufficient to establish standing requires Plaintiffs to show that EPA's actions impair CPRI's functioning as an organization by inhibiting either its ability to provide its core services, or its efforts to recruit members or obtain funding. *See Am. Fed'n of Gov't Emps. Loc. 1 v. Stone*, 502 F.3d 1027, 1033 (9th Cir. 2007) (recruitment injury); *Walker v. City of Lakewood*, 272 F.3d 1114, 1124–25 (9th Cir. 2001) (funding injury); *see also Fair Hous. Council v. Roommate.com, LLC*, 666 F.3d 1216, 1225 (9th Cir. 2012) (Ikuta, J., concurring) (citing *Havens*, 455 U.S. at 378–79 (finding standing based on a "concrete and

demonstrable injury" to the organization's core activities)). Plaintiffs have made no such showing here.

Plaintiffs do not allege that EPA's Petition denial impaired CPRI's ability to function as an organization, or to provide any core services. Indeed, they do not allege that CPRI has any programs or activities at all beyond submitting its citizen petition and filing this lawsuit. And because "[a]n organization's expenses in the pursuit of its agenda are self-effectuating," any theory allowing CPRI to establish standing based on the Petition alone would improperly allow "any advocacy group to manufacture standing by choosing to expend resources to advocate against policy decisions made by the federal government." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 288 (3d Cir. 2014) (quoting *Ctr. for Law & Educ. v. U.S. Dep't of Educ.*, 315 F. Supp. 2d 15, 24–25 (D.D.C. 2004)).

Plaintiffs also fail to plead a diversion of resources amounting to injury-in-fact. To do so, CPRI must show that it "would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Organizations cannot "manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *Id.* Rather, a cognizable diversion of resources occurs only when the organization is forced to divert resources to counter an injury to its ability to function. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) (en banc); *see also Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 632 F. App'x 905, 909 (9th Cir. 2015) (Chabria, J., concurring).

Plaintiffs' allegations fail this test. The Complaint vaguely states that EPA's Petition denial caused CPRI "to divert its resources toward other advocacy efforts." Compl. ¶ 9. But the

only effort CPRI describes is "developing, co-sponsoring (at its expense) and co-chairing a public hearing on November 1, 2022, in Boulder, Colorado," during which "key subject matter experts" addressed the adequacy of federal efforts on climate change. *Id*. CPRI's contention, then, is that because EPA denied the Petition, CPRI diverted resources to an event addressing why EPA should not have denied the Petition. That allegation does not show how, but for devoting resources to that event, CPRI "would have suffered some other injury," *Asociacion de Trabajadores*, 624 F.3d at 1088, nor what that injury might be. Indeed, the Boulder hearing appears to have been in furtherance of a core organizational priority—CPRI's advocacy around the Petition—rather than a redirection of resources. *See id.* In fact, far from being forced to *divert* resources because of the Petition denial, CPRI has used the denial in fundraising appeals to *augment* its resources. *See*, *e.g.*, Compl. at 18 n.11 (linking to a webpage soliciting donations under the heading "CPR Initiative's Petition to EPA"). CPRI's alleged injuries are self-imposed and abstract, not concrete and particularized. CPRI therefore lacks standing.

### b. The Complaint does not establish that CPRI can assert associational standing.

Plaintiffs also fail to allege that CPRI has members or represents a discrete constituency to establish associational standing.

An association can sue on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). An organization that is not a traditional membership organization like a union or a trade association can nevertheless sue on behalf of its constituency, but only if that

constituency comprises a "specialized segment" of the community that is the primary beneficiary of the organization's activities and possesses "all of the indicia of membership in an organization." *Id.* at 344.

CPRI does not meet this standard. For one, CPRI does not claim to be a membership organization. To the contrary, its articles of incorporation state that it does *not* have members— defined under Oregon law as persons entitled to, among other things, vote to elect an organization's directors. CPRI Articles of Incorporation, EPA Ex. 1 at 1; Or. Rev. Stat. Ann. §§ 65.001(30), 65.144.[1] CPRI also does not serve any specialized segment of the community that possesses indicia of membership in the organization, such as electing or serving in leadership, or paying dues. *See Hunt*, 432 U.S. at 344–45 (finding sufficient indicia of apple growers' membership in advertising commission where growers alone funded the commission and elected and served in commission leadership).

Although CPRI does not allege that it has members or is suing on any members' behalf, it does allege that unnamed individuals within the ranks of its board of directors, board of advisors, staff, and supporters have suffered harm from climate change. Compl. ¶¶ 9, 10; *see, e.g.*, Compl. ¶¶ 11–12 (alleging that supporters and staff have been adversely affected by smoke from wildfires exacerbated by climate change). But CPRI does not identify the supporters, staff, or board members who allegedly suffered those injuries; nor does it explain how they make up a constituency with sufficient indicia of membership to allow CPRI to sue on their behalf. CPRI does not claim that its staff and supporters elect or serve in leadership, pay dues or provide its

---

[1] On a motion to dismiss, the Court may take judicial notice of matters of public record outside the pleadings. *MGIC Idem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

sole source of financing—or even that they are an identifiable group. Plaintiffs therefore cannot show that CPRI's staff and supporters are the "functional equivalent of members," as necessary for associational standing. *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003).

Likewise fatal to CPRI's associational standing, Plaintiffs fail to plead that any "specialized segment" of the community is the "primary beneficiary" of CPRI's activities. *Hunt*, 432 U.S. at 344. CPRI's mission to "restore and protect a viable climate system" does not inure to the benefit of a particular group of staff and supporters, but rather to the public at large—or as CPRI admits, "our children [and] their progeny." Compl. ¶¶ 8, 9. That sort of generalized claim cannot support associational standing because, "[w]ithout a membership limitation, an organization could bring suit on any individual person's behalf simply by professing an interest in that person's welfare. Organizational standing would be nearly limitless." *Meister v. City of Hawthorne*, No. CV-14-1096-MWF, 2014 WL 12596426, at *3 (C.D. Cal. July 28, 2014); *see also Am. Legal Found. v. F.C.C.*, 808 F.2d 84, 90 (D.C. Cir. 1987) (rejecting assertion of standing on behalf of "supporters" that lacked "a definable membership body whose resources and wishes help steer the organization's course"). To have associational standing, CPRI must be "sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'" *Mink*, 322 F.3d at 1111 (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977)). It is not.

In any event, even if CPRI were a membership organization or its equivalent, it has failed to show that any member of its constituency has standing to sue. *Hunt*, 432 U.S. at 343. To the extent Plaintiffs contend that the individual plaintiffs who serve as Directors for or advisors to CPRI are the supporters on whose behalf CPRI may sue, the Complaint does not allege facts showing any of those individuals have standing.

DEFENDANT EPA'S MOTION TO DISMISS
OR TO TRANSFER VENUE                                                                        15

**B. Plaintiffs have not adequately alleged any harm causally connected to EPA denying their Petition, or redressable by a favorable decision.**

Even if the Complaint alleges injury-in-fact to at least one plaintiff, Plaintiffs still fail to demonstrate standing because they cannot demonstrate a causal connection between their asserted injuries and the challenged Petition denial. *See Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1142–43 (9th Cir. 2013). Plaintiffs certainly contend that they and others have suffered harm from climate change. *See, e.g.*, Compl. ¶¶ 12, 15. But the Complaint is bereft of allegations regarding how EPA's action contributes to or exacerbates those injuries. Without alleging that connection, Plaintiffs' fail to establish standing.

To have standing, Plaintiffs must allege "a causal connection between [their] injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up). Similarly, Plaintiffs must show their alleged injury could be redressed by a favorable judicial decision. *Id.*; *see also Bellon*, 732 F.3d at 1146 (explaining that standing's causation and redressability components are "two facets of a single causation requirement" (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). When an alleged injury "arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," it is more difficult to show standing. *Lujan*, 504 U.S. at 562. Furthermore, although even a lengthy causal chain may suffice to show standing, Plaintiffs must demonstrate the "plausibility of the links that comprise the chain." *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (quoting *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)).

Here, key links in that chain are not just attenuated, they are entirely missing. The only asserted connection between the alleged climate change-induced harms and the challenged

action—EPA's Petition denial—is the conclusory allegation that climate change and associated injuries will continue "unless stronger action is taken by the major emitting nations, including the US, consistent with" the action "sought in [Plaintiffs'] underlying petition." Compl. ¶ 25. That conclusory assertion is insufficient to "clearly allege facts demonstrating each element" of standing. *Spokeo*, 578 U.S. at 338 (cleaned up); *see also Twombly*, 550 U.S. at 555 (requiring a complaint to provide "more than labels and conclusions"). The Ninth Circuit has held that "the causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture about the behavior of other parties." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000). Here, Plaintiffs' Complaint leaves to speculation not only what effect any hypothetical EPA action might have on climate change and its attendant harms, but also what particular EPA action Plaintiffs sought in the first place. *See* Compl. ¶ 57 (stating that a TSCA rule "would *likely* compel a phase out of all GHG emissions," and could likely do so more expeditiously and efficiently than other programs "depend[ing] on the details of the draft rule that has yet to be devised" (emphasis added)).

The Ninth Circuit's decision in *Bellon*, 732 F.3d at 1142, is instructive. There, the court held that the plaintiffs failed to demonstrate causation because they had not shown that air pollution controls they believed Washington should have applied to certain sources would ameliorate their injuries. The court explained that although plaintiffs need not "connect each molecule" of greenhouse gases emitted from the target sources to their injuries, "simply saying that the Agencies have failed to curb emission of greenhouse gases, which contribute (in some undefined way and to some undefined degree) to their injuries, relies on an attenuated chain of conjecture insufficient to support standing." *Id.* at 1142–43 (internal quotation marks omitted). The court further found that the plaintiffs had not established redressability because they had not

"submitted any evidence that an injunction" requiring the particular controls plaintiffs sought "would likely reduce the pollution causing Plaintiffs' injuries." *Id.* at 1146–47.

Plaintiffs' allegations here are even less defined than those in *Bellon*. Whereas the *Bellon* plaintiffs identified specific facilities emitting greenhouse gases and asked for a particular type of pollution control to be applied, Plaintiffs here have generically alleged that EPA should engage in "rulemaking under Section [2605(a)]" that addresses "[greenhouse gases] and/or fossil fuel." Compl. ¶ 1. Plaintiffs can no more connect their injuries to EPA's refusal to adopt an undefined rule than can a regulated entity alleging harm from "the possibility of potentially adverse regulation." *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1323–25 (D.C. Cir. 2013); *see also State of Louisiana v. Biden*, No. 22-30087, 2023 WL 2780821, at *3 (5th Cir. Apr. 5, 2023). Put differently, if undefined regulatory action fails to create a cognizable future harm, so too must undefined regulatory *inaction*. Here, Plaintiffs do not allege what particular rule they desire, the activities or sources on which that rule would operate, the degree of emission reduction that rule would achieve, or the effect that reduction would have on the injuries Plaintiffs allege they have suffered. These critical missing links in the causal chain leave Plaintiffs unable to demonstrate standing.

Plaintiffs' broad aim to "phase out" the production, use, and disposal of greenhouse gases, "as warranted," Compl. ¶ 1—as well as fossil fuels and other, non-greenhouse gas products of fossil fuel combustion, *see* Compl. Ex. 1 at 3, 7 nn.7–8—does not bridge the causal gap between EPA's Petition denial and Plaintiffs' alleged injuries. The "phase out" concept is so broad and undefined that Plaintiffs cannot demonstrate—with any particularity or plausibility— the traceability necessary to show standing. In effect, Plaintiffs contend that EPA should be doing *something more* about climate change, using, in some unidentified way, its TSCA

regulatory authority. Essentially, then, theirs is a challenge to the way EPA administers TSCA and any other programs addressing climate change. *See, e.g.*, Compl. ¶ 46.G ("[W]e must timely phase out our present reliance on fossil fuels and establish an effective and lasting program to remove and sequester $CO_2$ and other GHGs at scale."). That sort of claim, "challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations" is "rarely if ever appropriate for federal-court adjudication." *Lujan*, 504 U.S. at 568. Together, the breadth of Plaintiffs' request, on the one hand, and its lack of specificity on the other, makes it impossible to conclude that Plaintiffs' alleged climate change-related injuries are fairly traceable to EPA's action.

Plaintiffs' failure to identify the particular EPA action they believe is "necessary" under TSCA, 15 U.S.C. § 2620(b)(1), also distinguishes this case from *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020). The *Juliana* court found that the plaintiffs demonstrated causation because they identified "a host of federal policies, from subsidies to drilling permits, spanning over 50 years" as a "substantial factor" in causing their climate-related injuries. *Id.* at 1169 (quotation omitted). By contrast, Plaintiffs here have not identified what federal action was foregone when EPA denied their Petition. Indeed, their Petition expressly disclaimed that it was seeking any particular action at all—apart from a bare determination that the "subject chemical substances and mixtures" present "unreasonable risk." Compl. Ex. 1 at 7, 15.

Moreover, Plaintiffs' contention that they are entitled to an "unreasonable risk determination," which would of its own force "require EPA to initiate a rulemaking process," Compl. Ex. 1 at 7, 15, is simply too attenuated. As an initial matter, the citizen petition process does not authorize requests for stand-alone risk determinations, as discussed further below. *See* Part IV.B.2 *infra*. Regardless, Plaintiffs fail to allege what TSCA requirements EPA could apply

DEFENDANT EPA'S MOTION TO DISMISS
OR TO TRANSFER VENUE                                                                                    19

to which chemical substances and mixtures from which sources—which are not already subject to some other regulation to the same end—to a degree that would alleviate their alleged injuries. The conclusory assertion that *if* EPA were to regulate under TSCA, then it *must* regulate to "eliminate" the risks described in Plaintiffs' Petition, Compl. ¶ 51, does not meet Plaintiffs' burden to "clearly allege facts" showing that denying the Petition causes Plaintiffs' alleged injuries. *Spokeo*, 578 U.S. at 338 (cleaned up).

For similar reasons, Plaintiffs cannot show that a favorable ruling would redress any injury. Although the Court cannot compel EPA to propose or adopt any particular rule,[2] Plaintiffs must nevertheless allege that such a proceeding could result in requirements that would remedy their alleged injuries. Because Plaintiffs have not alleged facts that "demonstrate that a decision in [their] favor 'will produce tangible, meaningful results in the real world,'" *Pritikin v. Dep't of Energy*, 254 F.3d 791, 799 (9th Cir. 2001), they lack standing.

Furthermore, insofar as Plaintiffs request a bare determination that the greenhouse gases and other substances addressed in their Petition present unreasonable risk, *see* Compl. Ex. 1 at 15, they have not alleged how a judicial order to make that determination would redress their alleged injuries. A request for a bare determination of unreasonable risk is not dissimilar to the declaration that the government was violating the Constitution by contributing to climate change injuries that the Ninth Circuit found inadequate to show redressability in *Juliana*, 947 F.3d at 1170 ("A declaration, although undoubtedly likely to benefit the plaintiffs psychologically, is

_____

[2] *See* S. Rep. No. 94-698, at 12 (1976) ("[I]n reviewing a denial of the citizen's petition by [EPA] the court can only require EPA to initiate an action. The court would not be allowed in this situation to determine the content of a rule or outcome of such a proceeding."); *see also* Order, *Ctr. for Envtl. Health v. Regan*, Case No. 7:22-CV-00073 (March 30, 2023), at 20 (Ex. 2).

DEFENDANT EPA'S MOTION TO DISMISS
OR TO TRANSFER VENUE                                                                    20

unlikely by itself to remediate their alleged injuries absent further court action."). Moreover, even if a determination prompted *some* (unspecified) action by EPA under TSCA, Plaintiffs have not alleged facts showing a connection between that action (again, unspecified) and, for example, the number of Man 'o War in the waters where Mr. Viviani swims, *see* Compl. ¶ 16, or any other alleged harms. The Ninth Circuit has expressed skepticism of a similarly remote chance that the *Juliana* plaintiffs' injuries would be "to some extent ameliorated." *Juliana*, 947 F.3d at 1171; *see also Bellon*, 732 F.3d at 1146–47 (holding plaintiffs failed to show that the injunction request would likely reduce the pollution causing their injuries). Plaintiffs lack standing, and their suit must be dismissed.

## II.    If Not Dismissed on Standing Grounds, the Case Should Be Dismissed or Transferred for Lack of Venue.

Because CPRI—the only Oregon-based plaintiff—lacks standing, venue is improper in this District. If the Court determines that the case may proceed as to one or more other plaintiffs, the Court should dismiss this suit or transfer it to a district where venue is proper under Rule 12(b)(3) and 28 U.S.C. §§ 1404(a) and 1406(a).

The Complaint alleges that venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(e)(1)(C) and 15 U.S.C. § 2620(b)(4) because CPRI resides in Eugene, Oregon. Compl. ¶ 7. No other plaintiff resides in Oregon. When venue is based on a plaintiff's residence, that plaintiff must have standing to bring the claims asserted. *Immigrant Assistance Project of the L.A. Cnty. Fed'n of Lab. v. INS*, 306 F.3d 842, 867 n.20 (9th Cir. 2002); *see also Ry. Lab. Execs.' Ass'n v. I.C.C.*, 958 F.2d 252, 255–56 (9th Cir. 1991) (declining to transfer venue only after confirming the venue-anchoring party's standing). Because CPRI cannot demonstrate standing, venue in the District of Oregon is improper. Accordingly, if the Court concludes that at

least one other plaintiff besides CPRI has standing, it must nevertheless "dismiss [the case], or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." 28 U.S.C. § 1406(a).

If the Court concludes transfer is appropriate, EPA requests transfer to the U.S. District Court for the District of Columbia. The District of Columbia is the judicial district in which defendant EPA resides and the place where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(A) & (B). Additionally, the U.S. District Court for the District of Columbia is the forum most familiar with the governing law and forum contacts relating to the cause of action. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). That court is experienced in adjudicating highly technical claims involving federal agencies, and—as the district in which the Petition denial was issued—it is the venue most closely tied to Plaintiffs' claims. Transferring to that forum would also be consistent with TSCA's statutory design, which makes TSCA rules presumptively reviewable in the District of Columbia regardless of the location of the parties. 15 U.S.C. § 2618(a)(1)(A). Here, because the individual parties are dispersed from coast to coast, and their resident judicial districts have little connection to the claim, the U.S. District Court for the District of Columbia is the most appropriate venue for any suit to proceed.

### III.    Plaintiffs Have Failed to State a Claim.

To the extent this Court has jurisdiction and concludes venue is proper, it should dismiss the Complaint for failure to state a claim.

TSCA gives a citizen petitioner the right to seek judicial review when EPA has denied a petition. It provides that, "in the case of a petition to initiate a proceeding *for the issuance of a rule* under section 2605(a)," the petitioner must demonstrate by a preponderance of the evidence

that "*the chemical substance or mixture to be subject to such rule* . . . presents an unreasonable risk of injury to health or the environment . . . under the conditions of use." 15 U.S.C. § 2620(b)(4)(B)(ii) (emphasis added). The Complaint fails to state a claim because it has not alleged—and the underlying Petition did not provide—facts to demonstrate two necessary elements. First, Plaintiffs did not identify with sufficient specificity which "chemical substance[s] or mixture[s]" were "to be subject to such rule." *Id*. Second, Plaintiffs did not identify what "rule" they want to govern those chemical substances and mixtures. Additionally, to the extent the Petition seeks a determination or action on legacy greenhouse gases, that "legacy disposal" is beyond TSCA's reach. *Safer Chems., Healthy Fams. v. EPA*, 943 F.3d 397, 426 (9th Cir. 2019).

### A. Plaintiffs failed to adequately identify the chemical substances or mixtures at issue in their Petition.

The Complaint fails to state a claim because it does not sufficiently specify which "chemical substance[s] or mixture[s]" would be "subject to" a "rule." 15 U.S.C. § 2620(b)(4)(B)(ii). The Petition seeks a determination that "the anthropogenic manufacture, processing, distribution, use and disposal of greenhouse gas (GHG) emissions, fossil fuels, and fossil fuel emissions" presents unreasonable risk. Compl. Ex. 1 at 3. In a footnote, the Petition states that the "greenhouse gases (GHGs) at issue in this Petition include carbon dioxide ($CO_2$), methane ($CH_4$), nitrous oxide ($N_2O$), and the Halocarbons—chlorofluorocarbons (CFCs), hydrochlorofluorocarbons (HCFCs) and halons (HFCs) from all sources." *Id.* at 7 n.7. The Petition is further addressed to "other pollutants released or emitted" during "the manufacture, processing, distribution, use and disposal of fossil fuels," including both greenhouse gases and

"other pollutants released or emitted during those activities, including particulate matter and sulfur and nitrogen dioxides." *Id.* at 7 nn.7–8, 13.

As EPA stated in its Petition denial, Plaintiffs' request is "insufficient because it lacks specificity, especially in comparison to the magnitude of the request." 87 Fed. Reg. at 57,699. A citizen petitioner must specify which chemical substances and mixtures—or defined "category" thereof, 15 U.S.C. § 2625(c)—are implicated to meet their burden to establish that a particular TSCA "rule" is "necessary," *id.* § 2620(b)(1). Furthermore, it is petitioners' burden to demonstrate to the court that "*the chemical substance or mixture* to be subject to such rule . . . presents an unreasonable risk of injury to health or the environment . . . under the conditions of use." 15 U.S.C. § 2620(b)(4)(B)(ii) (emphasis added); *see also id.* § 2605(a) (authorizing EPA to issue rules applying requirements to a particular "substance or mixture"). TSCA defines a "chemical substance" as "any organic or inorganic substance of *a particular molecular identity*," and a "mixture" as "any combination of two or more chemical substances[.]" 15 U.S.C. § 2602(2)(A) (emphasis added), (10). Plaintiffs' suit reaches dozens of discrete chemical substances the Petition identifies by name and unknown others under the umbrella of "greenhouse gases," "fossil fuels," and "other pollutants."

Plaintiffs' request is too broad and too nonspecific to state a claim under Section 2620(b)(4)(B)(ii). Because that provision's purpose is to determine whether a specific rulemaking should be initiated, TSCA requires Plaintiffs to allege specifically which chemical substance(s) or mixture(s) would be "subject to such rule," and which substance(s) and mixture(s) present "an unreasonable risk of injury to health or the environment." 15 U.S.C. § 2620(b)(4)(B)(ii); *see also id.* § 2605(a) (authorizing EPA to apply requirements "to *such substance or mixture* to the extent necessary so that *the chemical substance or mixture* no longer

presents" the identified unreasonable risk (emphasis added)). Even though Plaintiffs do specify some chemical substances by name—carbon dioxide and methane, for instance—many others are not. For instance, the Petition does not specify which "fossil fuels" are covered, stating only that "[c]ertain fossil fuels" and "certain petroleum products" qualify as TSCA "chemical substances," without providing any comprehensive list of such substances or further elaboration on specific chemical identities—for instance, as they might appear on the TSCA Chemical Substance Inventory. Compl. Ex. 1 at 19; *see* 87 Fed. Reg. at 57,699. Similarly, the Petition does not provide a complete accounting of the "other pollutants released or emitted" from fossil fuel use that are within the scope of the Petition. *See* Compl. Ex. 1 at 7 n.8 (stating that "other pollutants" "includ[es]" particulate matter, sulfur, and nitrogen oxides). Plaintiffs' Complaint, moreover, refers vaguely to a "requested GHG *and/or* fossil fuel rulemaking," highlighting the continuing lack of clarity even as to which broad, undefined group would be "subject to such rule." Compl. ¶ 1 (emphasis added).

Plaintiffs' overbroad Petition, addressing an indefinite set of heterogenous substances, therefore exceeds TSCA's statutory bounds. Generally speaking, TSCA's risk management and citizen suit provisions envision action to address unreasonable risk presented by a *single* chemical substance or mixture. *See* 15 U.S.C. § 2605(a) (authorizing EPA to impose requirements on "*a* chemical substance or mixture"); *id*. § 2620(b)(4)(B)(ii) (authorizing a court to determine whether "*the* chemical substance or mixture" at issue in a citizen petition presents unreasonable risk). While there might be circumstances in which a citizen petition or rule could appropriately address more than one chemical substance, TSCA clearly requires identification of the chemical substance(s) or mixture(s) at issue.

Moreover, Plaintiffs forfeited any reliance on EPA's ability to act with respect to a "category of chemical substances or mixtures," 15 U.S.C. § 2625(c), by failing to invoke that provision or otherwise provide a basis for treating the "subject chemical substances and mixtures" as a "category." *See* 87 Fed. Reg. at 57,669. TSCA defines a "category of chemical substances" as:

> a group of chemical substances the members of which are similar in molecular structure, in physical, chemical, or biological properties, in use, or in mode of entrance into the human body or into the environment, or the members of which are in some other way suitable for classification as such for purposes of this chapter[.]

*Id*. § 2625(c)(2)(A); *see id.* § 2625(c)(2)(B) (similar). The chemical substances and mixtures mentioned in the Petition have vastly different structures, properties, uses, and modes of entrance. Even if some of the chemical substances operate as greenhouse gases in the atmosphere, not all of them do: For example, fossil fuels (as opposed to greenhouse gases emitted through fossil fuel use) and the "other pollutants" resulting from fossil fuel combustion, such as particulate matter and sulfur and nitrogen oxides. Plaintiffs provided no reason why these substances are "suitable for classification" as a category.

Having failed to identify what chemical substances and mixtures (or what category thereof) Plaintiffs claim are necessary for regulation by a TSCA rule, and thus which chemical substances or mixtures might present unreasonable risk of injury to health or the environment, 15 U.S.C. § 2620(b)(4)(B)(ii), Plaintiffs fail to state a claim. Their Complaint should be dismissed.

**B.  Plaintiffs' Petition failed to request a "rule" as required under TSCA.**

To be the basis for a cause of action under 15 U.S.C. § 2620(b)(4), a citizen petition must identify a "rule" that it contends is "necessary" for EPA to issue. The point of the provision, after

all, is to determine whether a specific rulemaking should be initiated. Yet, in addition to failing

to identify sufficiently the chemical substances and mixtures at issue in their Petition, Plaintiffs

did not identify any rule to govern those chemical substances—either individually or as a

category. In fact, Plaintiffs expressly disclaim an intent or duty to do so. As a result, Plaintiffs'

Petition is facially insufficient, and their Complaint does not state a claim.

### 1. TSCA requires citizens to petition for "a rule," but Plaintiffs expressly disclaim that they have done so.

TSCA's citizen petition provision empowers "any person" to petition for one and only

one thing under Section 2605: the initiation of "a proceeding for the issuance . . . of *a rule*." 15

U.S.C. § 2620(a) (emphasis added). The petition must "set forth the facts which it is claimed

establish that it is *necessary* to issue . . . *a rule* under § 2605." *Id.* § 2620(b)(1) (emphasis added).

TSCA does not expressly define "a rule," *see generally* 15 U.S.C. § 2602, but the statute makes

clear that a rule under Section 2605(a) applies "one or more . . . requirements" to "a chemical

substance or mixture," *id.* § 2605(a); *see also id.* § 2605(a)(2)(A) ("the rule imposing the

requirement"); § 2605(a)(2)(B) (same). The citizen petition judicial review provision makes this

requirement even clearer. It provides that, if EPA denies a petition, as it did here, petitioners may

seek review of that petition in district court. Courts may then award relief only if a plaintiff

demonstrates that "the chemical substance or mixture to be subject *to such rule* presents an

unreasonable risk of injury to health or the environment[.]" *Id.* § 2620(b)(4)(B)(ii) (emphasis

added). To state the self-evident, a petition for "the issuance of . . . *a rule*" must ask for *a rule*.

*See Trumpeter Swan Soc'y v. EPA*, 774 F.3d 1037, 1040 (D.C. Cir. 2014) (explaining that a

Section 2620 petition must "satisfy only two requirements: that it be filed in EPA's principal office and that it set forth facts establishing the need for *the requested rule*." (emphasis added)).

Plaintiffs have failed this basic requirement, and they disclaim even having tried. Rather than a rule, the Petition seeks "only" a predicate *determination* that the "subject chemical substances and mixtures" present an unreasonable risk. Compl. Ex. 1 at 3; *id*. at 15 ("[T]he instant Petition seeks only EPA's unreasonable risk determination."). Plaintiffs assert that *if* EPA makes the requested determination, EPA would be obligated to propose its own rule to "phase-out the manufacture . . . and, as warranted, the processing, distribution, use, or disposal" of such substances and "compel industry to remove and, as necessary, to securely sequester legacy GHG emissions." *Id.* at 4; *see also* Compl. ¶ 46.G. Even if true, that does not relieve Plaintiffs—as administrative petitioners—of their obligation to actually request a rule to effectuate that goal. Petitioners cannot hold a request for a rule in "reserve," Compl. Ex. 1 at 26, until after EPA makes an unreasonable-risk determination.

Given the fundamental flaw in their approach, Plaintiffs fail in several ways to clarify the contours of any TSCA rule they assert is necessary. As explained above, Plaintiffs do not sufficiently identify what chemical substances or mixtures would be regulated. They also do not specify the conditions of use of those substances to be regulated—a basic identification of some circumstance "under which a chemical substance is intended, known, or reasonably foreseen to be manufactured, processed, distributed in commerce, used, or disposed of." 15 U.S.C. § 2602(4). Petitioners vaguely "suggest" EPA consider "the present and historic use of fossil fuels including, in particular, the hydrocarbon combustion process that aims to form $CO_2$ and $H_2O$," Compl. Ex. 1 at 25, but do not describe those uses with any detail. Nor do Plaintiffs

adequately describe any specific conditions of use for the other "subject chemical substances and mixtures" that are not fossil fuels.

Plaintiffs also fail to identify which of the requirements listed in Section 2605(a) should apply. Instead, Plaintiffs "reserve their option to propose to the Agency further specifications for consideration in a [Section 2605] rulemaking after EPA has rendered the requisite unreasonable risk determination and opens such a rulemaking docket." Compl. Ex. 1 at 26. The Petition offers vague ideas for what those actions might look like, but only by quoting from the menu of requirements listed in Section 2605(a). *Id.* at 26–27.

TSCA's plain language requires more. A petition must "set forth the facts which it is claimed establish that it is *necessary* to issue . . . *a rule under § 2605*." 15 U.S.C. § 2620(b)(1) (emphasis added). Without identifying the particular rule sought, the Petition fails on its face to set forth facts that could show that such a rule, if offered, would be *necessary*. Although Plaintiffs contend "it was not Plaintiffs' burden to provide a detailed draft rule," Compl. ¶ 49; *see also* Compl. Ex. 1 at 15 ("[I]t is not Petitioners' burden *here* to propose in detail requirements that EPA should propose following its [unreasonable risk] determination."), the problem here is not the absence of detail. Plaintiffs do not identify even the broad contours of *any* particular rule they believe is necessary under TSCA. *See* 87 Fed. Reg. at 57,669. Without this foundational element of their TSCA claim, the Court should thus dismiss Plaintiffs' Complaint.

### 2. An "unreasonable risk" determination is not "a rule."

Although Plaintiffs' Petition and Complaint invoke Section 2620's authorization of petitions seeking "a rule," the only explicit request is for a "determination" that the "subject chemical substances and mixtures" present an "unreasonable risk." *See, e.g.*, Compl. ¶ 65 (describing their legal claim as their "unreasonable risk of injury claim"); Compl. Ex. 1 at 3, 7

(seeking "determination" that the chemical substances "present[] an unreasonable risk of injury to health and the environment," not a rule regulating that risk); *id*. at 15 ("Importantly, here, Petitioners emphasize that the instant Petition seeks only EPA's unreasonable risk determination."). But an unreasonable risk determination is not a rule, and Section 2620 does not authorize citizen petitions for such determinations. Consequently, the Complaint fails to state a claim on which relief can be granted.

The text and structure of TSCA make clear that an unreasonable risk determination is neither a rule nor a cognizable request under Section 2620 in at least three ways. First, TSCA differentiates a risk evaluation—and subsequent risk determination—under Section 2605(b) from a risk management "rule" under Section 2605(a). The statute states that if EPA determines that a chemical presents an unreasonable risk under § 2605(b), then EPA shall "by *rule* . . . apply . . . requirements" to that chemical substance or mixture to the extent necessary to remove the unreasonable risk. 15 U.S.C. § 2605(a) (emphasis added); *see also id.* § 2605(c) (describing additional requirements for "subsection (a) *rules*," which EPA may issue upon making a determination of unreasonable risk). Furthermore, Section 2605(b)—which governs EPA's risk evaluations—mentions "rule" or "rulemaking" only in the context of a separate requirement that EPA establish, by rule, processes and criteria for designating chemical substances as high-priority and low-priority and conducting risk evaluations. *See id.* § 2605(b)(1)(A), (b)(1)(C), (b)(4)(B), (b)(4)(C). It does not use those words with respect to risk determinations. *See id.* § 2605(b)(4)(A).

Second, TSCA's provision giving chemical manufacturers, but no one else, the right to request a Section 2605(b) risk evaluation further supports the conclusion that citizen petitions cannot seek a stand-alone risk determination. *See id.* §§ 2605(b)(4)(C)(ii), 2605(b)(4)(E). A risk

evaluation is a formal process in which EPA assesses the risks presented by a chemical substance or mixture, concluding with a determination of whether any risk presented is unreasonable. *See generally id.* § 2605(b). It would undermine the statutory structure to permit citizen petitions to be used as a back door to a risk determination divorced from a particular "rule." *See* 87 Fed. Reg. at 57,667.[3]

Finally, Section 2605(i) draws a distinction between the two final agency actions that can emerge from an unreasonable risk determination and clarifies that the determination itself is not a rule. The first agency action is "a final *rule* promulgated under subsection (a), *including* the *associated determination*" of unreasonable risk. *Id.* § 2605(i)(2) (emphasis added). In other words, the "associated determination" that a chemical substance presents an unreasonable risk is included in and underlies "a final rule promulgated under subsection (a)," but is not a rule on its own. *Id.* The second final action under Section 2605(i) is an EPA "determination" under Section 2605(b) "that a chemical substance does *not* present an unreasonable risk," which "shall be issued by *order*," not by rule. *Id.* § 2605(i)(1) (emphasis added). TSCA's specification that EPA shall issue a negative determination by "order" eliminates any lingering possibility that an unreasonable risk determination could itself be a rule.

To be sure, a citizen petitioner must demonstrate that the chemical substance or mixture presents unreasonable risk, and EPA must conclude that such risk exists to grant a petition and impose requirements under Section 2605(a). But a demonstration of unreasonable risk is only

---

[3] Notably, the judicial review provision of 15 U.S.C. § 2620(b)(4)(B)(ii), which Plaintiffs invoke here, specifies that it applies specifically to petitions "for the issuance of a rule under section *2605(a)*" (emphasis added), not action under section 2605(b).

one element of a Section 2620 petition. Without proposing the rule they contend is "necessary," Plaintiffs fail to state a claim.

### 3. Requiring Plaintiffs to petition for "a rule" is a critical gatekeeping requirement, protecting EPA's administrative capacity.

The requirement that Plaintiffs petition for "a rule" and set forth facts establishing that such a TSCA rule is "necessary" performs a critical gatekeeping function, aiding EPA review in two ways. First, it requires petitioners to evaluate, in the first instance, whether their petitions for a rulemaking are tenable. Second, it provides EPA with more information with which to evaluate petitions. Reading this requirement out of Section 2620 would undermine that important function and contravene TSCA's purpose and structure.

Under TSCA, Congress imposed a highly standardized process for EPA to prioritize, assess, and regulate chemical substances. At any given time, EPA must be in the process of conducting risk evaluations for at least 20 high-priority chemical substances plus up to ten manufacturer-requested risk evaluations. *Id.* §§ 2605(b)(2)(B)-(C), 2605(b)(3)(C), 2605(b)(4)(C)(ii), 2605(b)(4)(E). And EPA must then conduct rulemaking for any evaluated chemical that presents unreasonable risk. *Id.* § 2605(a), (c)(1). Each step is subject to statutory deadlines. *See* 15 U.S.C. § 2605(b)(1)(C), (2)(A)-(C), (3)(A), (C), (4)(D), (G), (c)(1).

In contrast to that years-long process, TSCA gives EPA only 90 days to grant or deny a citizen petition under Section 2620. This short time period—coupled with the highly structured risk evaluation and risk management process in Section 2605—indicates that citizen petitioners must provide a specific, clear request demonstrating all necessary elements under Sections 2620 and 2605(a). EPA's Petition denial articulates that requirement, explaining that for "EPA to be able to conclude within the statutorily mandated 90 days" that "a proceeding for the issuance of a

TSCA [Section 2605(a)] rule is necessary, the petition would need to be sufficiently clear and robust." 87 Fed. Reg. at 57,668. Indeed, in a similar context, the Seventh Circuit recognized that when "Congress deliberately gave the EPA a rather short time period" to review a proposal and decide how to act, "it is reasonable in [that] context for the EPA to refrain from extensive fact-finding." *Citizens Against Ruining the Env't v. EPA*, 535 F.3d 670, 678 (7th Cir. 2008). As applicable here, TSCA's requirement to "set forth the facts" which "establish that it is necessary to issue . . . a rule" establishes important guardrails to avoid overwhelming EPA's regulatory capacity. Absent these necessary elements—including some description of what "rule" Plaintiffs contend is required—EPA would be faced with an overwhelming range of hypothetical rules that could be implicated by the Petition.

The requirement to request "a rule" is also evidenced by the obligation that a petition "set forth the facts which it is claimed establish that it is *necessary* to issue" such rule. 15 U.S.C. § 2620(b)(1) (emphasis added). To show that "a rule" is "necessary" requires petitioners to grapple with how a TSCA rule fits within the constellation of other environmental laws. TSCA is one of many statutes administered by EPA aimed at limiting and/or preventing environmental harms. *See Reilly*, 909 F.2d at 1498 ("Congress structured the Act to fill 'conspicuous gaps' in the protection afforded by preexisting 'fragmented and inadequate' statutes[.]"). A petition must show that a *TSCA* rule is "necessary," which implicitly means that other regulatory regimes cannot address the unreasonable risk presented by a chemical substance or mixture.

Petitioners have not done that here. For example, in this case Plaintiffs' TSCA Petition seemingly includes hydrofluorocarbons (HFCs), potent greenhouse gases used in refrigerants. But HFCs are already subject to a comprehensive phase-down program under the American Innovation and Manufacturing Act ("AIM Act"), 42 U.S.C. § 7675. *See also* 87 Fed. Reg. at

DEFENDANT EPA'S MOTION TO DISMISS
OR TO TRANSFER VENUE                                                                    33

57,670–72. In failing to suggest any rule at all, Plaintiffs fail to make any case for why action under *this statute* is needed.[4]

To be clear, EPA could grant a petition to initiate a proceeding for a requested rule and then ultimately propose a different rule than the one requested. *See* Order, *Ctr. for Envtl. Health v. Regan*, at 20 (EPA Ex. 2). But that reality does not eliminate the statutory requirement to petition for "a rule," nor does it erase the benefits of the statute's gatekeeping function. Petitioning for "a rule" frames and grounds the petitioners' request and EPA's review, making it more manageable for EPA to review the petition within the 90-day window.

*       *       *

As shown above, TSCA's plain text requires petitioners to request a "rule"—and, for that matter, to sufficiently identify the chemical substances and mixtures to be subject to such rule. EPA's reading of that text (and other statutory text addressed herein), in the course of evaluating Plaintiffs' Petition, is entitled to deference given EPA's charge to "carry out" TSCA, 15 U.S.C. § 2601(c), and its expertise in implementing the statute's complex and multifaceted structure for evaluating and managing risk, and for evaluating citizen petitions under Section 2620. *See Ctr. For Biological Diversity v. Jackson*, 815 F. Supp. 2d 85, 93–94 (D.D.C. 2011) (deferring to EPA's construction of a citizen petition given EPA's "expertise in handling TSCA petitions"); Order, *Ctr. for Envtl. Health*, at 22–24 (EPA Ex. 2). EPA's thorough response to Plaintiff's Petition explained why, especially given the Petition's broad, ill-defined sweep, it failed to meet

---

[4] To the extent Plaintiffs contend that TSCA action is necessary because, in their view, only under TSCA could EPA compel sequestration of legacy greenhouse gas emissions, Plaintiffs are mistaken. As explained in Part IV.C, *infra*, legacy disposals are beyond TSCA's reach.

DEFENDANT EPA'S MOTION TO DISMISS
OR TO TRANSFER VENUE

TSCA's basic requirements to request a particular "rule" and identify the chemical substances and mixtures to be subject to that rule. *See* 87 Fed. Reg. at 57,669. In sum, without having requested a *rule* and demonstrating that such rule is *necessary*, Plaintiffs are not entitled to relief under Section 2620. The Court should dismiss their claim.

### C.  EPA cannot regulate legacy greenhouse gas disposal under TSCA.

At the very least, Plaintiffs' Complaint must be dismissed insofar as it requests regulation of greenhouse gases that have already been emitted into the atmosphere. As discussed above, *see supra* Part IV.B.1, Plaintiffs do not specify the conditions of use they seek to compel EPA to regulate. The one possible condition of use that the Petition emphasizes most—legacy disposals of greenhouse gas emissions—is squarely outside of TSCA's reach.

TSCA defines "conditions of use" as the circumstances "under which a chemical substance is intended, known, or reasonably foreseen *to be* manufactured, processed, distributed in commerce, used, or disposed of." 15 U.S.C. § 2602(4) (emphasis added). EPA reasonably has interpreted this provision to mean disposals that are prospective or ongoing "rather than reaching back to evaluate the risks associated with" disposals of chemical substances or mixtures that have already been completed. *Procedures for Chemical Risk Evaluation Under the Amended Toxic Substances Control Act*, 82 Fed. Reg. 33,726, 33,730 (July 20, 2017).

The Ninth Circuit has affirmed EPA's interpretation, holding that "conditions of use" "unambiguously does not reach legacy disposals." *Safer Chems.*, 943 F.3d at 426. In *Safer Chemicals*, the Ninth Circuit agreed with EPA that a "substance that has already been disposed of will not ordinarily be intended, known, or reasonably foreseen to be prospectively manufactured, processed, distributed in commerce, used, or (again) disposed of." *Id.* at 425–26.

Thus, the court agreed with EPA that legacy disposals fall outside of TSCA's definition of "conditions of use."

Here, Plaintiffs' burden includes showing that the chemical substances and mixtures in their Petition present unreasonable risk "under the[ir] conditions of use." 15 U.S.C. § 2620(b)(4)(B)(ii). Legacy disposal is not a "condition of use," and thus any risk associated with the legacy greenhouse gases already in the atmosphere falls outside the conditions of use that EPA can regulate under TSCA. Plaintiffs' Complaint therefore fails to state a claim insofar as it attempts to reach such disposals.

## CONCLUSION

For these reasons, the Court should find that Plaintiffs lack standing and dismiss the Complaint with prejudice for lack of jurisdiction. If the Court concludes some Plaintiffs have standing but CPRI does not, it should dismiss for lack of venue or transfer to the U.S. District Court for the District of Columbia. If the Court concludes that it has jurisdiction and venue is proper, it should dismiss the Complaint for failure to state a claim.

Dated April 10, 2023.

Mr. TODD KIM
Assistant Attorney General

*/s/ Sarah A. Buckley*
Ms. SARAH A. BUCKLEY (she/her)
Mr. GUS MAXWELL (he/him)
Ms. AMANDA V. LINEBERRY (she/her)
sarah.buckley@usdoj.gov
gustavus.maxwell@usdoj.gov
amanda.lineberry@usdoj.gov
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 616-7554 (Buckley)
(303) 844-1347 (Maxwell)
(202) 616-5376 (Lineberry)

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 10,961 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*/s/ Sarah A. Buckley*
SARAH A. BUCKLEY
